Rod whenever you are ready morning your honors Andrew Grinrod representing the appellant Robert McLamb may it please the court in 2015 the FBI used a single anticipatory warrant to remotely search thousands of personal computers located around the world including mr. McLamb's these searches were unconstitutional for several reasons first the Federal Magistrates Act does not authorize magistrate judges to issue global warrants this purported warrant was therefore void and no warrant at all under the Fourth Amendment second this was a general warrant although it purported to authorize literally a did so without identifying any particular place or person to be searched third the warrants execution violated the Fourth Amendment because the only valid triggering condition for this anticipatory warrant never occurred each of these constitutional violations merit suppression and suppression is also required because the rule 41 violation here prejudiced mr. McLamb for these reasons we asked the court this court to reverse the decision below let me begin by what I think is the easiest way perhaps for this court to dispose of this case much like the Kruger majority did in the Tenth Circuit and that's the rule 41 prejudice because under even the government's version of the Burke test where we deal with hypothetical facts mr. McLamb was prejudiced and the warrants violate rule 41 this technology could only search globally and that was uncontested in the district court and it's uncontested here as a factual matter and so applying the government's version of the Burke test if rule 41 had been followed mr. McLamb would be free no search would have occurred and so that's an easy way that this court can avoid the thornier constitutional questions and resolve this simply on rule 41 prejudice grounds but let me address some of the constitutional issues and I'll begin by addressing particularity this is the general warrant that grubs and Andrews warned against grubs in the Supreme Court and this court's decision in Andrews the government says that the place to be searched here was any computer that logged in to the playpen site but that was an indeterminate number of computers when the warrant issued that category of places simply didn't exist any computer in the world could have logged on to the playpen site but none was identified in the warrant application as being particularly likely to do so and so the government met part two of the grubs test for anticipatory warrants by showing that it was likely that the triggering condition would occur only by skirting particularity because it had identified up front any computer it was actually likely to enter the site and so grubs and Andrews warned in the context of anticipatory warrants that dealt with the package the delivery of a package of drugs that if if the government didn't identify the place that to which the drugs were going to be delivered and make a showing that it was likely that that would drugs would be delivered there then you could get an anticipatory warrant to search any home in the United States if drugs were delivered and that's what we have here the knit warrant authorized the search of any computer in the world if in the future it visited the playpen site and importantly your honors it did not have to be this way so the government could have been much more particular eyes in the way they set out the places to be searched here and the government in fact did this for three playpen users in page 8 I'm sorry in paragraph 18 of the warrant application which is a joint appendix page 69 there the government made individualized showings probable cause by identifying a playpen user by username reciting the historical conduct that that particular so this is a joint appendix page 69 it's paragraph 18 of the application for the warrant in this case and and that that's because the government once they seize the playpen server they had access to historical information that was logged on the playpen site and so they knew the total amount of time that someone had been on the site historically they knew whether that person had posted information on the site how many the government in its warrant application says there were a hundred users that made at least 100 posts a certain number of users that had made at least 300 posts and so the government can't do that for every I mean it this if it was the person's first time on the site you wouldn't have that sort of information all you know is that the anticipatory condition did occur here because he did put in the username and password right that's true your honor but that's that's part of really what the problem is with particularity is because it's an open set there is no top-end cap on on who this warrant could be executed against at the time it issued and there was no showing there is in the sense that you have to be sufficiently motivated to have a username and password to enter the playpen site which would on its own terms be self-limiting to some extent if not a considerable I I think that's I think that's true as a factual matter your honor I don't think it's sufficient from a particularity standpoint and so I think I'm just trying to put what you're saying which is I think overly broadly stated into some sort of real world context so so I mean every site presumably is available to me on my computer if I knew at all how to access it that's true yes but I do think the scope here is quite broad even of the of the set of people who were searched and so as I said in my introduction you know we're talking about literally a million potential searches the government didn't execute the warrant that many time but at page 680 of the joint appendix the government's own exhibit shows that there were a million people a million instances of people clicking through and we're talking about a hundred thousand individual users so assuming we agree with you on on all of this what about the good faith exception I'd like to hear your argument on that well your honors um so what I think that to some extent the good faith argument is tied to what the constitutional flaw is but let me specifically with regard to particularity this was a problem that was clear on the face of the warrant and and the Supreme Court's decision in Leon even singled out particularity problems as those that are particularly unlikely to be susceptible to good faith excuses by the government for the very fact that it is clear on the face of the warrant application with respect to some of the other problems that we've identified particularly the rule 41 problem I think that the basis for the rule 41 violation is pretty clear in our brief but let me address Judge Thacker that the good faith problems with that aspect of the government's investigation and really the the rule 41 problem was cleat and it was acknowledged by the Department of Justice as early as 2009 we had the CSIP manual the DOJ manual and this is a page 838 of the joint appendix there's a head note and it says agents should obtain multiple warrants if they have reason to believe that a network search will receive data stored in multiple locations and then at page 1008 of the joint appendix we have FBI testimony in this case where the FBI agent testified we reasonably believed that there were members of the playpen website throughout the country and throughout the world and so even if the FBI and the Department of Justice had just followed their own guidance they would have known that one warrant could not support these searches under rule 41 but that wasn't all we had because in 2013 we had the only published decision on this point which was the NRA warrant decision out of Texas there the judge said knit warrants like this do not comply with rule 41 and here's why as a result of that decision the government and the Department of Justice lobbied the Rules Committee to change rule 41 so that these searches would be allowed and this lobbying effort went from 2013 well before this warrant application was applied for and the change wasn't enacted until after this change this applied for and that in lobbying the Rules Committee the Department of Justice specifically cited this kind of investigation they said we need this change because we want to conduct investigations of tour based child pornography sites and and so that change had not happened and though and the government decided to move forward anyway we layer on top of that background information agent McFarland's actual knowledge in this case which even though it's an objective test under good faith the officers subjective knowledge of facts is relevant and here we have testimony that was undisputed below that the FBI agents who applied for this warrant and executed this warrant consulted with senior Department of Justice attorneys and consulted with the CIOs division the the child and exploitation and obscenity section they consulted with the remote operations that indicate good faith on the part of these officers so I think because of the because of the way this particular violation happened and and and it was no indication that CIOs what CIOs told them they may have been given bad advice well that's true your honor that's that's the basis for our privilege weren't they entitled to rely on their consultation with Department of Justice attorneys so so we tried to get into the communications and were prevented from doing so in the district court and that's the basis for our the privilege issue we raised here because the government put those communications at issue by saying they relied on those consultations but we don't know what was said I think what it's fair to assume based on the record is that this rule 41 problem was at least discussed and we know that from the lobbying efforts and the entities that were involved the remote operation good faith effort on the part of the agents here well except your honor that you know that that's certainly what what what could be argued right that's what we want them to do but but in the face of this this wasn't a question certainly like Davis where the law was clearly established and they could well the extent to which I'm not sure this particular area benefits very much for from an analysis where you're not dealing with electronic research in the parameters of the law are so unclear which is precisely why the government sought and received the clarification which I suspect they were aware was forthcoming and and I think this would be a different case judge Duncan if the government had flagged this rule 41 issue for the magistrate and that's really where I'm sorry you're saying that to what are you saying exactly for purposes of a good faith analysis so our position really if you look at the Supreme Court's decision in Johnson which was a retroactivity case but dealt with kind of the the the basis for when suppression has meaningful deterrent impact and there the Supreme Court suggested that where officers move forward despite official awareness of the dubious constitutionality of their conduct then suppression helps ensure future compliance with with the Constitution it forces officers or incentivizes officers here it won't because it's now the rule now makes plain that what they did is did is well well I think taking one I think there is your honor and that's because this is about the next case in the next I'm just not sure so in the next case your honor where the law is not clear or where at least the limited published authority that exists says this is unconstitutional government action then the if the court suppresses here in the future the government will either seek the rule change instead of moving forward despite the fact that their or your honor they will be more explicit in their application to a magistrate or whoever whatever the judge is that they're seeking permission from and identify in an ex parte proceeding this is the problem this is the rule 41 potential problem and get a ruling on that and they stop short of that here your honor the difficult one of the difficulties that I'm having is I understand that the triggering condition must be likely to occur and there has to be a fair probability that incriminating evidence will be uncovered but there is an abundance of evidence here that there was no that the purpose that play pin was a known site for child pornography and there were there was probable cause to believe that anyone who visited that site was doing so for the purpose of engaging in not just criminal activity but also the exploration of ways in which to disguise the existence of the criminal activity. So I think and we have not contested in this appeal the probable cause determination by the magistrate in the warrant application. Our position on the anticipatory warrant is that. You shouldn't have gotten past step one. You shouldn't have gotten the anticipatory warrant in the first place at the outset. Well no not with respect so so our particularity argument is that you shouldn't have gotten a warrant that didn't identify any place to be searched ex ante and then I think what we've raised is a separate problem with the triggering condition here and that is that just as a fundamental matter of law when you have an anticipatory warrant the triggering condition has to preserve the magistrate's probable cause assessment because the magistrate is saying in the future there will be probable cause if this happens and so however you define the triggering condition that actually triggers the determination has to still remain valid and here the facts changed and so all our position is on the anticipatory warrant piece is that when the facts changed the officers didn't have the discretion to execute the warrant anyway. They had to go back and get a probable cause determination on those facts. I see my time has expired. Thank you. You have some time on rebuttal. Thank you very much. Mr. Cook. May it please the court. I'd like to start with what is a threshold question in this case that I don't think defense counsel spent much time addressing which is does the knit warrant satisfy rule 41b-4 and on that question I think that there has been some discussion in the courts but that the plain language of the applicable rule and statute really answer the question and if you go first to the statutory provision that defines a tracking device that's in 18 U.S.C. 31-17b it defines a tracking device as an electronic or mechanical device which permits the tracking or movement of a person or an object so that statute tells us that we can satisfy an electronic means of tracking and you can also track objects which is rule 41 defines includes information and that's also true going back to the New York telephone case from the Supreme Court so we know that you can use an electronic device like the knit and that you can track information like the digital content from the playpen website and so then you're left with the question of where was the knit installed because rule 41b-4 says that you have to install the tracking device in the district and the warrant itself on its face makes clear that the installation of the knit was on the playpen website in the Eastern District of Virginia the agent testimony also established that that is the case which the FBI already had possession of that's true so it's more invasive than a tracking device because it's attached to what the FBI already has possession of but it is invading homes worldwide it's more of a hacking device no and I would say it's actually less invasive in the sense that if if the you know the knit were installed on a device that the obviously that installation itself cannot be a Fourth Amendment violation because you're doing something the government has possession of now we got a warrant because we knew that the knit would then go into homes and people's computers and homes and so a warrant gives you adequate authority to do that but it doesn't just track the information that goes from the site into that computer it doesn't just track it and say this is where it went it's its own agent in there it gets in there and conducts a search well that's I think a really important and critical question in this case and there you need to focus on what is the scope of a tracking device and what separates it from other types of warrants and what was the information sought here and the information sought here was functionally to identify the location of a computer and it really didn't meaningfully go beyond that and one way to see that is that the government didn't take back child pornography from defendants computers when they found them all the government found was a collection of information that allowed it to specify within a home once it had an IP address which particular computer within that home might have logged on to the playpen website and the fact that we then had to go to the internet service provider and use a subpoena to find out who was associated with that IP address and then on top of that go and get a warrant from the district where that person's computer was or the IP address was located shows that we weren't doing what was just a general I'm gonna look at all the content in your computer we were just figuring out what's the location of the computer that logged on to this website and that's classic practice. Didn't it go in there and see that there was information that they wanted to get a warrant for in other words didn't the device go in there and identify? No, so the device obtained the following information it got the activating computer's IP address and date and time so that's the first cut on location. I'm sorry just to clarify what did it get the IP address of? Okay so that's that's an important question I got the IP address of the end user who is getting on to the playpen website and the thing that. So in order to get an IP address the IP address was only for people who had the who had obtained the password and user ID to log on to playpen. Exactly. So it wasn't just every computer in the universe you had to have visited you had to have expressed an interest to visit the playpen website to have your IP address. That's exactly right and that's why the NIT was useful if it had had some really indiscriminate you know searching it would have been useless to the government. I mean there's no evidence that once we had these IP addresses we were going to people who had not logged on to playpen. There's no evidence of that whatsoever. And what else did it get the IP address? So it got the IP address and then the next is the the NIT would assign a unique number to the person to the person it responded to and that was a way to monitor who had visiting the website and to make sure that you weren't going back to the same person. So then you also it obtained the operating system the type on the computer which is that's useful for within a home you've got multiple computers often using one IP address. So you know I get internet service from Verizon and I am and other people in my home could have multiple computers. And so you would have to go into somebody's home to figure that out. Yes that's right. But that's so that's what this that's what this thing did. That's right. And so the idea is to track where it tracked what was in the home. It gave you more precise location information. In fact what was in it going back to Judge Cogburn's question it it it was more invasive in in terms of the information that it got than a regular tracking device that could just sort of track what publicly you would be aware of. But it's still location information. You're still saying within a particular IP address. It was an operating system that was being used within that location. Right. But that's not very I mean that's really not very personal information. That's you know everyone who's got an Apple computer has got a certain type of Apple related operating system. Well what I mean that you know you're arguing that that's not personal information. But what will the next thing be that well I think there's a simple way to answer the question about when you've gone too far in searching for information for it to be a tracking device. And that's just the functional question of is this information that helps identify the the the person you're looking for and the limited array of information sought here was all designed to identify the particular computer at issue and none of it was itself evidence of criminality. So it was the IP address and the operating system that was being used on a particular computer. What else? Okay. And so you have the activating computer's hostname, MAC address and the username on the operating system. So all of this is just telling you who was it and what's the location the particular computer who may have been logging on to Playpen. It was unlike dramatically unlike this case that defendants frequently cite from the District of Texas or I guess it was the NRA warrant from 2013 where they commandeered the video camera on the computer, collected email content, got accounting information, browsing history, documents, photographs. That's a search that is very full in scope and with the right set of facts the new B6 provision would permit that kind of remote searching for evidence of a crime. But when you are just collecting information that is telling you who is it that logged on to Playpen, which is the thing that the TOR network prevents us from otherwise being able to figure out, you've got a straightforward tracking device. And the fact that we had to go and get warrants from individual magistrate judges where the IP address was located shows that really what this functionally what this warrant did was just tell us where do we have to go in order to get the warrant that enables us to search for content that is the evidence of the crime. But I ask, what more did you need than the IP address? I mean what, what? Why ask for more than the IP address? Right. And I mean you could have stopped theoretically with just the IP address. But again you would still have the problem that frequently there are many computers in a home and multiple people living within a home and you want to be able to try to determine which of those people was the one who is using Playpen. Lots of time people share a single IP address. And so you needed this additional information in order to try and zero in a little more precisely. But I would emphasize that that additional information both wasn't terribly personal but more important also was not itself going to be evidence of criminal conduct. It's just evidence to determine location a little more precisely. And there's nothing in the text of the rules of Rule 41B4 or in 3117B that says yeah you can have a tracking device as long as it is vague or as long as it stops at the level of a home but doesn't give you anything more precise. Maybe there would be, I mean there almost certainly would be a problem if we were doing tracking into a home without a warrant. But this is judicially supervised looking within a home via warrant for the location information. And then once you have that you've got the further process of going to the internet service provider to figure out who has that IP address and then the further process of another warrant issued by the magistrate judge in the district where the person's IP address is located to do the search of that particular physical location. And so really the big picture is that I think has gotten lost in some of the judicial decisions in this area is that this was just gathering location information. And Rule 41B4 authorized that when you start in the district where the tracking device is installed and the tracking device was plainly installed in the Eastern District of Virginia. The warrant says that I mean starting with attachment A it says this warrant authorizes the use of a network investigative technique to be deployed on the computer server described below or that computer server described below is in the Eastern District of Virginia. It was my understanding perhaps you can clarify that the NIT was only deployed if that's the right word when the user accessed a particular thread. That's correct. In the Kinky Fetish Zoo forum. That's right. Tell me how that, what it means to say that the NIT was only deployed. What does that mean? Was it only when the user accessed that thread that you obtained the IP address? Right. So what happened is. Was that a yes? Yes. Oh you explained. Right. I just want to make sure that that was an affirmative response and not a you are getting ready to explain. Right. Yes. And so what happens is you use your username and password. You log on to the PlayPen website and then you additionally download content as your honor described it. And when you download the content the user does takes that affirmative step. The user also unwittingly takes with it the NIT code and the NIT code then says to that user's computer give us this identifying information. Give us the IP address. Right. And so that's the way that's the way this worked. And to reinforce the point that there wasn't some installation occurring on the end user's computer. It was a code that the computer downloaded if the computer went to this Kinky Fetish whatever. Right. Right. And once the user got the NIT back at the user's computer nothing is left behind from the NIT. All that the NIT does is cause that computer to transmit back this limited identifying information. Could it have caused the transition of content? No. Not this NIT. I mean you could have a different type of device that would do that and then you might have a closer question about whether it was a tracking device. But this NIT only sent back that limited information that was again just location information in essence or a way of determining location. And one point I want to and stepping back to again the larger question of is there suppression warranted in this case. When you have this good faith standard it does not make sense that given the strength of the government's arguments here about this is and the 3117B covers electronic means of tracking an object. Objects include electronic evidence and the rule. Are you talking about the strength of the arguments you just made? Right. Okay. So what if I don't agree with those arguments, what is your good faith exception given the 2009 FBI publication, the warrant case, all the things that opposing counsel raised? Right. Well first of all nothing the defendant has cited shows that the government believed that this tracking device was not a tracking device and nothing that he has cited discusses this sort of collection of limited identifying information. Now it's true that the government thinks that in seeking this kind of before B6 was added that if you were going to go and look in someone's computer and harvest child pornography from their computer and use that to prove your case that's going beyond a case and you should be in the district where the defendant is located to get such a warrant. But that's not this warrant. This warrant was nothing like that Texas warrant that they keep citing. And so there isn't any evidence that the government via its own internal documents that he has produced or the testimony thought that this warrant was improper. But moreover the basic question for a court is an objective one about looking at the law. Was the magistrate judge correct and if not was it an objectively reasonable determination that the magistrate judge made? And if the answer to that question is yes then under an objective standard whether somebody within the government had a different idea really doesn't answer the question that the good faith. But if we're going to consider we're going to consider good faith as part of good faith that experts were consulted. Is it correct to say that there's information that the discussions that were had are being kept from secret so that we don't know somebody up there said said well this is really pretty loosey goosey but let's just go ahead and just give it a shot. I mean we I doubt that happened. You're keeping all that information from the from the from the folks to be able to argue good faith. Why is that being kept secret? Well if it was so good why would why not tell us how good it was? Right. Well several reasons. One is the fact of a good faith defense doesn't mean that the government loses its deliberative process privileges. And there isn't moreover when you're dealing with technology like this its usefulness often depends on people not knowing exactly the full details of the way that the exploit for example which is now classified works because if it's publicly known all the details it becomes useless because people defeat it. And so it's not that the details necessarily are so juicy and revealing of some evil intent it's just that if you have disclosure of them it becomes useless. It's like in the world of you know troop movements in the military you could have where your troops are located is not a terribly revealing or you know and some you know is there some evil conduct within the government. No but but if your opponent knows it they're going to take full advantage of it. And so you can't have the particulars of the exploit and that's the exploit. Let me be clear that's not the code that says to the end users computer send this limiting location information back. That's the part of the net that allows you to get around all this encryption within the TOR network. So you know just to step back on how the TOR network works you've got end user who then contacts this hidden website on the TOR network and you have packets of information that move from end user to these node computers along the way. Each one of them is encrypting and that's the part that makes it so difficult to figure out who's on that website. And so this exploit is allowing the government to get around the encryption and shielding of the end users IP addresses it moves through those nodes. And so this was a long winded way of saying there are very good reasons why the government doesn't want to turn over everything that it says about how this stuff works because it would destroy the usefulness of the device. But as to the more basic question about whether the legal advice is something that the defense should have in the context of a suppression motion I think that the dramatically more informative information is how courts are looking at the strength of the legal arguments about whether this is a tracking device or not and whether it was a reasonable call for the magistrate judge. And on that you've got now you know dozens of district court opinions that have weighed both whether this was a tracking device and whether good faith is warranted and that's the kind of information that you get from an objective evaluation of the strength of the competing legal arguments not some subjective evaluation within the government. I see my time is up but one last point if the court would allow on that which is which is that you do have the testimony from that agent McFarland who is one of the person who swore out the warrant who says that you know he thought that this was a perfectly legal warrant and so there you begin with the testimony that's unrebutted that this agent thought that this was a valid warrant. Thank you very much. Your Honor let me begin where my friend on the other side left off and that is this testimony by agent McFarland about his belief and the basis for his belief that this goes to the questions that you were asking Judge Cogburn because our position is not simply that raising good faith automatically waives any otherwise existing privilege but when the government affirmatively says that it is based on the reliance on consultations with specified attorneys at the Department of Justice that forms the underlying basis for this belief that Mr. Cook is still today relying on to support good faith claims that is using the privilege as a sword and a shield. And so at the very least we think a remand for further development of the facts on those issues is necessary. But let me address some of the points about whether this this technology really is a tracking device. My friend on the other side said that we have not shown that the government didn't think this was a tracking device at the time. Well again we've got the privilege problem there but again the application doesn't use the words tracking device once. It's on the wrong AO form if in fact the government believed this was a tracking device warrant. The government argued in the district court not just that this was authorized under B4 but also that it was an authorized search under B2. And so it seems that the government's own views of its authority here have evolved especially throughout the district court litigation. But at the end of the day that the real. It does read like a tracking device though. When I read it that was my immediate impression which I guess it could contribute to my technological lack of sophistication but that is what it sounded like. I think it's I think the government made attempts to frame it that way. You can't have it both ways. You can't say that they didn't use the term but they attempted to frame it that way. Oh I'm sorry you're talking you mean in the in the application. Yeah. Oh yeah. Well I and in the statute it does read like a tracking device. So so as from a factual standpoint I think the record's clear that it did not in fact work that way. And so at Joint Appendix page 464 we have testimony of the FBI agent who says we wanted to seize information from the defendant's computer and that's what they did with this technology that the government is talking about the type of information. Well can I just back up a little bit. Yes. There's a kind of a gulf between they seized the information that the hub the nub of my problem with your argument is that the NIT the NIT seized the this information from users who accessed a thread with a very suggestive name in a forum on a site that was very difficult to access in the first place in which there is abundant evidence to show was used exclusively for the exchange of child pornography and concealing one's activities. So it's not I take it is I think it's theoretically possible that it could affect my to be irreducible minimum given the number of steps that one would have to go through to trigger. So so I have two responses to that Your Honor and the first is that from a threshold standpoint I think what that question gets at the existence of probable cause which really doesn't weigh I don't think one way or another on the particularity of the warrant right or as to whether this was in fact a tracking device. I mean whether there was probable cause or not to search or attach a tracking device it's still one or the other. And I think the second point I would make is a factual matter is there was an assertion on page 18 of the government's response to an unrelated motion to compel that that was how this particular warrant was executed here. But that's different from what the warrant authorized. And so to be clear we're challenging the validity of the warrant. The search is authorized by the warrant and the warrant authorized the deployment of the NIT as soon as you click log on on that welcome page. The playpen welcome page. Yes Your Honor. It in and of itself required the password and user ID did it not? Right. But those were created simply one page before. If you didn't already have a password. Right. But it did require an affirmative step is my only point to get to that to do that. It's not an open site. So if you were sent a hyperlink and you clicked on the hyperlink you were taken to the landing page. If you didn't have a username or password. But it didn't operate quite that openly did it? I mean it was it was access to it was far more layered in disguise than that. Well so the way the government frames it is that you had to know you had to either navigate there and they say how you could have or you had to know the specific URL. But that's just a fancy way of saying click on a hyperlink because whenever you click on a hyperlink you're essentially entering a URL into your browser. Yeah it's not I don't mean to argue with you about the access but it's not quite as open is my only point. It's not something that would pop up on the ordinary computer. Well Google search for example. I don't think you have to you have to make a real effort to get there. Well you have to have TOR. But if you have TOR and someone sends you an email or a private message or something and there's an embedded hyperlink if you click on that hyperlink you're taken. I think we understand your point. Thank you very much. We'll come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, Stephanie D. Thacker, Max O. Cogburn, Jr.